# Exhibit B

## COMMONWEALTH OF MASSACHUSETTS

**SUFFOLK, ss**

**BOSTON HOUSING COURT**
**CIVIL ACTION No 12H84CV000376**

CITY OF BOSTON, through the )
    INSPECTIONAL SERVICES )
    DEPARTMENT )
          Plaintiff )
      v. )
     )
JAMES DICKEY and )
EAST FOURTH STREET, LLC )
        Defendants )
     )

## DEFENDANT JAMES DICKEY'S MOTION TO DISSOLVE THE RECEIVERSHIP AND/OR RECONSIDERATION OF THE DEFENDANT'S MOTION FOR THE REMOVAL OF RECEIVER JAMES COTTER III

### Introduction

Defendant James Dickey ("Defendant") now seeks that this Court dissolve the Receivership and/or remove James Cotter III ("Cotter") as receiver for 495 and 497 East Fourth Street, South Boston, Massachusetts (the "Property"), as this Court has implemented an overly broad receivership and as Cotter's actions warrant removal.

### Procedural History

On May 9, 2012, Edward Coburn, acting as a lawyer for the City of Boston (the "City"), filed a Petition for Receivership, (pursuant to Mass General Law Chapter 111 section 127I (the "Statute")), with the Boston Housing Court for 495 and 497 East Fourth Street, South Boston, Massachusetts. The petition was granted by Judge Marylou Muirhead, ex-parte, appointing Cotter as receiver for the Property. On May 29, 2012, Cotter placed a padlock on 497 East Fourth Street, denying the Defendant access to the building since that date.

1

On November 21, 2012, a motion to remove Cotter as receiver for the Property was filed in the instant case, which was subsequently denied by this Court.

### Factual and Legal Argument

In the case at bar, an issue of controversy is whether the Boston Housing Court's jurisdiction subject matter includes implementing a *general* receivership for a property pursuant to the Statute; the Defendant's position is that the Statute allows this Court to implement only a *special* receivership, as the Statute limits the rights, duties and powers of the receiver "in accordance with the provisions of this section". *M.G.L. Ch. 111 section 127I.* This Court's Order appointing Cotter as receiver appears to indicate otherwise, as a general receivership has been implemented for the Property, (the Order authorizes the receiver to "take possession and control of the property"). Please see Exhibit A, *Order Appointing Receiver*.

The question as to whether the Boston Housing Court can implement a general receivership has been previously addressed by the Massachusetts Supreme Court; in *Perez v. Boston Housing Authority* that court held "there is strength in the position that while Section 127I is naturally geared to the prospect of many homely occasions for rent receiverships of single private properties which become offensive to the sanitary code, the section, especially in the light of its second sentence ("such powers and duties as the court shall determine"), can be read together with Section 127H (d) to empower the court on compelling facts to install a receivership of broader coverage, not limited to a single property or to the rents". *Perez v Boston Housing Authority,* 379 Mass. 703 at 731, (1980).

2

In response to the *Perez* ruling, the Massachusetts Legislative amended the Statute in part, by deleting "such powers and duties as the court shall determine" and replaced the phrase with "[receivers] rights, duties and powers shall be specified by the court in accordance with the provisions of this section"; and further restricted the general equity powers of this Court by inserting: "nor shall appointment of a receiver suspend any obligation the owner or any other person may have for payment of taxes, of any operating or maintenance expense, or of mortgages or liens, or for repair of the premises". Please see Exhibit B, *Historical and statutory notes of M.G.L. Ch. 111 section 127I.* The 1992 amendment of the Statute eliminated this Court's ability to appoint a general receiver for a subject property.

While ignoring the 1992 Statute revisions, and under the guise of implementing a general receivership, this Court has instead implemented a racketeering scheme which allows Cotter to sell receivership property to his friends below market.[1]  To further explain, the racketeering scheme occurs as follows:   upon appointment as receiver, Cotter submits a *Receiver's Motion for Final Judgment, for Order Enjoining Nuisance and for Authorization to Sell Property*, stating that there are no funds to repair the property and asks this Court for authorization to sell the offending property; the motion is subsequently approved by Judge Muirhead.   Upon authorization, Cotter sells the subject property to an associate at a reduced rate; and is further compensated about $15,000.00 from the proceeds of the sale as his agreed upon hourly rate is $350.

---

[1]   In the instant case, the Defendant filed a Third-Party Complaint against Cotter and others asserting violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961-1968, the Hobbs Act, 18 U.S.C. § 1951, and Mail Fraud, 18 U.S.C. § 1341; the Third-Party Complaint has been transferred to Suffolk Superior Court, (Civil Action No. SUCV-2013-01747).

This racketeering scheme has occurred in over ten receiverships filed in this Court; a recent example occurred when Cotter sold 24 Seaver Street to Thomas Broderick Jr.  Please see Exhibits C and D, *Deed for 24 Seaver Street* and *Corporate filing for Trinity Green*.  Thomas Broderick Jr. is the brother of Kevin Broderick, who was a Lowell City Council member, who might have been instrumental in having Charles Hope LLP appointed as receiver for at least two receiverships in the City of Lowell.  See Exhibit E, *Lowell Sun article quoting Kevin Broderick as saying the receivership is a "win-win" situation* and Exhibit F, *Mortgage from Thomas Broderick Jr. to Kevin Broderick*.  These two cases, Northeast Housing Court case 11H77cv000142 and 11H77cv000143, were Lowell's first receiverships.

Subsequently, Charles Hope LLP hired Cotter as their legal representative in over ten receivership cases, (Northeast Housing Court case 11H77cv000142, 12H77cv000164, 170, 171, 172, 187, 188, 190, 284, 299, 300, 302), which has resulted in a personal financial gain to Cotter.  Please see Exhibits G1 thru G12, *Dockets indicating Attorney James Cotter III as lawyer for Charles Hope LLP.*  On May 13, 2013, Cotter again sold a receivership property to Thomas Broderick, being 70 Bowdoin Street, (please see Exhibit H, *Deed*), without disclosing to this Court the above mentioned relationship.

In the instant case, the Defendant alleges Cotter was appointed receiver for the Property to effect a sale of the Property[2, 3], as Cotter has not repaired the Property and as

---

[2]  At a June 21, 2013 hearing, Cotter indicated that he would **now** redirect his attention to 497 East Fourth Street as a foreclosure sale had occurred for 495 East Fourth Street.

[3]  While Cotter submitted to this Court a motion to repair the Property, it is the Defendant's contention that this motion was submitted only for the purpose of giving Endeavor a first place position mortgage on the Property, (as discussed below), which would allow Endeavor to then foreclose on the Property.  The repairs Cotter sought would not result in an occupancy permit being issued for the Property.

4

Cotter has sold numerous building placed in his care to his friends, (as discussed above). In an attempt to explain these questionable transactions, Cotter states that receivership properties are difficult properties. While the Defendant agrees with Cotter that properties placed into receivership would be difficult to sell, the Defendant suggests that the major impediment to a sale is the Receiver's lien placed on the property. To further explain, the Statue states that "the receiver shall have a lien with priority over all other liens or mortgages. . . and such lien priority may be assigned to lenders for the purpose of securing loans for repair . . .", (*Mass Gen Law Ch. 111 sec. 127I*), and since most lenders financing the purchase would require their mortgage have a first place position on the property, the Receiver's lien impedes the sale of the building as it occupies the first place position, (the Receiver's lien survives the sale of the property).

Furthermore, Cotter's decision to limit the buyers to individuals who have had "experience with receivership-type properties" restricts the potential buyers to a few select individuals who have purchasing numerous building condemned by the City. While Cotter indicates in his *Receiver's Opposition to Defendant/Third-Party Plaintiff James Dickey's Motion to Remove Receiver James Cotter III*, (filed with the Court on November 26, 2012), that he sells properties only after a marketing campaign, such a campaign would not result in the subject property being sold at market rate due to the restrictions imposed by both the Statute and Cotter, which then allows Cotter to sell the subject property to a friend, (not an arms length transaction). Another recent example of such a transaction occurred when Cotter sold 18 Ames Street to his friend Cyril Hughes, (please see Exhibit I, *Deed for 18 Ames Street)*; as Mr. Hughes is also the principal owner of Hughes Construction, being the contractor with whom Cotter asked that this Court

5

allow him to enter into a contract to repair the Property, (please see *Motion for Authorization to Enter into Contract for Repairs*, submitted to this Court on October 23, 2012, and please see Exhibit J, *Corporate filing for Hughes Construction*).

While the Statute exempts a Receiver from public bidding laws, the Receiver's transactions should be at "arms length". This issue was discussed in *City of Boston v. Rochalska*, 890 N.E. 2d 157 (Mass. App. Ct. 2008); 72 Mass App Ct 236, where the Boston Housing Court concluded that the "most troublesome part of the Receiver's claim involves Daniel Buckley . . ." as the Receiver's claims involving Buckley were "not an arms length transaction". *Id.* at 250.

In the instant case Cotter's questionable transactions have continued, on October 23, 2012, Cotter filed two motions with the Boston Housing Court, a motion to obtain a loan and the above mentioned motion to enter into a contract for "repairs", (please see *Motion for Authorization to Enter into Loan for Repairs to Receivership Property* and *Motion for Authorization to Enter into Contract for Repairs*, submitted to this Court on October 23, 2012). At least one, (and maybe both[4]), of the contracts Cotter sought authorization on appears not to be at arms length. As indicated in the Third-Party Complaint filed in the instant case, Edward Coburn arranged to have Cotter appointed receiver with the understanding that Endeavor Capital Funding LLC, ("Endeavor"), who has a second mortgage on the Property, would finance the receivership. Endeavor entered into this arrangement in response to the Defendant's allegation that Endeavor's

---

[4]   While the Defendant has not determined if the above mentioned motion for repairs is an arms length transaction, the underlying report from Choo & Company is in error, Cotter should have a second structural engineer examine the building before submitting his motion to the court. Furthermore, as the plaster had yet to be removed from the walls to further examine the structural condition of the ell, Choo's report is based on speculation.

6

mortgage is in violation of the Massachusetts Usury Law. Cotter is aware of the litigation between East Fourth Street and Endeavor, (Middlesex Superior Court Civil Action No. MICV-2012-03101), as he was told by the Defendant that any attempt to obtain financing from Endeavor would be opposed.

Instead of seeking a loan from Endeavor, Cotter sought authorization for a loan from Commonwealth Equity Funding LLC, which is a sister company of Endeavor, but failed to disclose this relationship. While Endeavor is owned in part by Chris Anderson, Commonwealth Equity is owned by Brian Anderson, Chris Anderson's cousin, (upon information and belief). Please see Exhibit K, *change of address for Commonwealth Equity*; Exhibit L, *change of name for Endeavor Capital*; and Exhibit M, *Annual Report for Antrim, all which indicated 404 S. Huntington Ave as the business address.* The loan Cotter attempted to procure is not at arms length, and was just an attempt by Endeavor to place a first mortgage on the Property for the purpose of circumventing the litigation between East Fourth Street LLC and Endeavor, and proceed with a foreclosure sale on the Property.

The Boston Housing Court learned of receiver Kaye's questionable transactions in the *Rochalska* case, but continued to appoint Kaye as receiver for other properties, (Boston Housing Court case 04H84CV000318); through the instant case, this Court has been informed of Cotter's questionable transactions, but has made no attempt to remove him as receiver for the Property or any other ongoing receivership case in the Boston Housing Court, (hence the RICO claim filed against Judge Winik and Judge Muirhead in the instant case). Nor, it appears, has this Court attempted to further investigate Cotter's qualification as a receiver, as Cotter received a public remand from the Massachusetts

7

Board of Bar Overseers, (please see Exhibit N, *Public Remand No. 98-2*), which alone is sufficient reason to remove Cotter as receiver for the Property.

   **Wherefore,** the defendant James Dickey now requests that the Receivership for the Property be dissolved as this Court does not have jurisdiction to implement a general receivership, and the Defendant further asks that Cotter be removed as receiver for the Property as his actions warrant his removal.

                    Respectfully submitted
                    by Pro Se Defendant,


                    James Dickey
                    10 NewBridge Road
                    Sudbury, MA  01776
February 3, 2014        978.443.2504

8

## VERIFICATION

I, James Dickey, do hereby dispose under the pains of penalties of perjury that I have read the foregoing motion and attest and that I believe that, to the best of my knowledge, the motion is true and accurate.

February 3, 2014

James Dickey

## CERTIFICATION OF SERVICE

I, James S. Dickey, hereby certify that a true copy of the above document was served upon the Receiver and the attorney on record of each party by hand on February 4, 2014.

February 4, 2014

James Dickey

# EXHIBIT A

*Copy*

# COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss

HOUSING COURT DEPARTMENT
CITY OF BOSTON DIVISION
CIVIL ACTION
NO. 12H84CV000376

**CITY OF BOSTON
INSPECTIONAL SERVICES DEPARTMENT,**
Plaintiff

v

**JAMES S. DICKEY and EAST FOURTH STREET, LLC,**
Defendants

## ORDER APPOINTING RECEIVER

This matter was before the court on May 23, 2012 with respect to the Plaintiff's Verified

Petition to Appoint a Receiver. Pursuant to G.L. c. 111, sec. 127*I* and the general equity powers

of this court, having found that there is a history of serious and longstanding violations of the

State Sanitary Code, and having found that the Defendants have failed to correct the violations,

the court has determined that these violations will not be promptly corrected unless a receiver is

appointed, the court herein appoints:

James J. Cotter III (hereinafter "Receiver")
(BBO# 10162)
Post Office Box 270
North Quincy MA 02171
617-899-0549

to serve as Receiver in the above-captioned action, for the property at 495 - 497 East Forth Street

in the South Boston neighborhood of Boston("Property"). For title reference see deeds from

James S. Dickey to East Fourth Street, LLC recorded in the Suffolk County Registry of Deeds on

March 19, 2009, at Book 44690, Pages 276 and 279.

The Receiver shall have all the rights, duties, obligations, and protections of a Receiver as established by G.L. c. 111, sec. 127I, and other applicable provisions and law, including, but not limited to the right to

1.    Take possession and control of the property, including the right to enter, modify, and terminate tenancies and/or remove trespassers pursuant to Massachusetts Law, and to charge and collect rents and apply rents collected to the costs incurred due to the receivership.

2.    Negotiate contracts and pay all expenses associated with the operation, conservation, or redevelopment of the property, including, but not limited to, all utility, fuel, custodial, repair, management, and insurance costs.

3.    Pay all accrued property taxes, penalties, assessments, and other charges imposed on the property of a unit of government, as well as any charge of like nature accruing during the pendency of the receivership.

4.    Dispose of all abandoned personal property found on the premises.

5.    Retain contractors to repair, restore, renovate, demolish, reconstruct, or otherwise perform work on the subject Property, in order to render it and the surrounding area safe and habitable.

6.    Obtain financing and grant security interests or liens on the Property with public or private lenders, and to so encumber the Property so as to have moneys available to address the conditions at the Property giving rise to this receivership.

7.    Employ companies, persons or agents to perform its duties hereunder.

8.    Charge a Receiver's Fee at an hourly rate as approved by the court.

9.    File with the court and serve upon all parties an initial inspection report, and thereafter status reports as required.

10.   Verify title to the Property that is the subject matter of this action and take all reasonable actions to

(i)    add as parties hereto all parties who do or could claim an interest in such Property, all lien holders and any party necessary to obtain full relief

2

Bk: 49701 Pg: 34

hereunder or to accomplish the purposes of this receivership, and

(ii)     obtain clear, marketable and insurable title to the Property.

Pursuant to G.L. c. 111, sec. 127I, all costs and expenses of the Receiver, and the repayment of any loans for the repair, operation, maintenance, management, demolition or otherwise, of the Property shall have first position priority over all other liens or mortgages except for municipal liens.

As set forth in G.L. c. 111, sec. 127I (as amended), the Receiver or its agents or employees shall be immune from suits for negligence in the performance of their duties herein stated, except to the extent of assets of this receivership. The Receiver shall not be liable in contract, tort, or criminally to any tenant, owner, heir, heir apparent, trustee, Executor or Executrix and any creditor or to any governmental agency on account of the condition of the Property, any Code violation or otherwise. Neither the Receiver nor its agents or employees shall have personal liability whatsoever in contract or otherwise to any creditor, owner, heir, heir apparent, trustee, Executor or Executrix of the Property for actions taken within the scope of the receivership. The Receiver may purchase liability insurance for all risks, and such insurance may be charged to the expenses of the receivership.

The Petitioner, the Respondent, the Receiver and any other interested parties shall have the right to request, by motion and with advance notice, further orders from the court consistent with G.L. c. 111, sec 127I, common law, or the terms of this Order. In the event of emergencies, service of motions to parties on this action by facsimile transmission shall be acceptable.

This matter is scheduled for a status hearing on **Friday June 22, 2012 at 11:00 a.m.** in **Courtroom 16, at the Edward W. Brooke Courthouse, 24 New Chardon Street, Boston,**

3

Massachusetts.

**SO ORDERED.**

MARYLOU MUIRHEAD
ASSOCIATE JUSTICE

May ꞔ𝒓3        , 2012

I hereby accept such appointment as Receiver:

James J. Cotter III (hereinafter "Receiver")
(BBO# 10162)
Post Office Box 270
North Quincy MA 02171
617-899-0549

Approved as to form and content:

City of Boston,
By its Attorney,


Edward Coburn, Esq.
BBO # 655916
Boston Inspectional Services Department
1010 Massachusetts Avenue
Boston, MA 02118
(617) 961-3465


cc:     James J. Cotter, III, Esquire
        Edward Coburn, Esquire
        Rosemary Traini, Esquire
        James S. Dickey
        East Fourth Street, LLC
        Guillermo Garza, Assistant Clerk Magistrate

4

# EXHIBIT B

Westlaw.

C

**Effective:[See Text Amendments]**

Massachusetts General Laws Annotated Currentness
    Part I. Administration of the Government (Ch. 1-182)
        Title XVI. Public Health (Ch. 111-114)
            Chapter 111. Public Health (Refs & Annos)
                → → § 127I. Enforcement of sanitary code; remedies; receiver

Upon the filing of a petition to enforce the provisions of the sanitary code, or any civil action concerning violations of the sanitary code by any affected occupants or a public agency, whether begun in the district, housing or superior court, and whether brought under section one hundred and twenty-seven C or otherwise, the court may: issue temporary restraining orders, preliminary or permanent injunctions; order payment by any affected occupants to the clerk of court, in accordance with the provisions of section one hundred and twenty-seven F; or appoint a receiver whose rights, duties and powers shall be specified by the court in accordance with the provisions of this section.

Upon receipt of service of any petition in which the appointment of a receiver is sought, the owner shall provide to the petitioner, within three days, a written list of all mortgagees and lienors of record. At least fourteen days prior to any hearing in any such proceeding, the petitioner shall send by certified or registered mail a copy of the petition to all mortgagees and lienors included in the owner's list as well as to all other mortgagees and lienors of which the petitioner may be aware, and shall notify them of the time and place of the hearing. Upon motion of the petitioner, the court may order such shorter periods of prior notice as may be justified by the facts of the case.

Whenever a petitioner shows that violations of the sanitary code will not be promptly remedied unless a receiver is appointed and the court determines that such appointment is in the best interest of occupants residing in the property, the court shall appoint a receiver of the property. Any receiver appointed under this paragraph may be removed by the court upon a showing that the receiver is not diligently carrying out the work necessary to bring the property into compliance with the code, or that it is in the best interest of any tenants residing in the property that removal occur.

No receiver shall be appointed until the receiver furnishes a bond or such other surety and provides proof of such liability insurance as the court deems sufficient in the circumstances of the case. Upon appointment, the receiver shall promptly repair the property and maintain it in a safe and healthful condition. The receiver shall have full power to borrow funds and to grant security interests or liens on the affected property, to make such contracts as the receiver may deem necessary, and, notwithstanding any special or general law to the contrary, shall not be subject to any public bidding law nor considered a state, county or municipal employee for any purpose. In order to secure payment of any costs incurred and repayment of any loans for repair, operation,

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

maintenance or management of the property, the receiver shall have a lien with priority over all other liens or mortgages except municipal liens, and such lien priority may be assigned to lenders for the purpose of securing loans for repair, operation, maintenance or management of the property. No such lien shall be effective unless recorded in the registry for the county in which the property is located.

The receiver shall be authorized to collect rents and shall apply the rents to payment of any repairs necessary to bring the property into compliance with the sanitary code and to necessary expenses of operation, maintenance, and management of the property, including insurance expenses and reasonable fees of the receiver, and then to payment of any unpaid taxes, assessments, penalties or interest. Any excess of income in the hands of the receiver shall then be applied to payments due any mortgagee or lienor of record.

Nothing in this section shall be deemed to relieve the owner of property of any civil or criminal liability or any duty imposed by reason of acts or omissions of the owner, nor shall appointment of a receiver suspend any obligation the owner or any other person may have for payment of taxes, of any operating or maintenance expense, or of mortgages or liens, or for repair of the premises.

The receiver shall be liable for injuries to persons and property to the same extent as the owner would have been liable; however, such liability shall be limited to the assets and income of the receivership, including any proceeds of insurance purchased by the receiver in its capacity as receiver. The receiver shall in no instance be personally liable for actions or inactions within the scope of the receiver's capacity as receiver. No suit shall be brought against the receiver except as approved by the court which appointed the receiver. Nothing herein shall be construed to limit the right of tenants to raise any counterclaims or defenses in any summary process or other action regarding possession brought by a receiver.

The remedies set forth herein shall be available to condominium unit owners and tenants in condominium units. Whenever used in this section, the term "petitioner" shall include a condominium unit owner or tenant, the term "owner" shall include a condominium association, the terms "mortgagees" and "lienors" shall include mortgagees and lienors of individual condominium units, and the term "rents" shall include condominium fees. The receiver shall have the right to impose assessments upon individual condominium units for payment of expenses incurred in the exercise of his powers, which liens shall have priority over all other liens and mortgages, except municipal liens.

The receiver shall file with the court and with all parties of record, on a bimonthly basis, an accounting of all funds received by and owed to the receiver, and all funds disbursed, and shall comply with such other reporting requirements mandated by court, unless, for cause shown, the court determines that less frequent or less detailed reports are appropriate; provided that said notice shall not be less than five days.

CREDIT(S)

Added by St.1965, c. 898, § 3. Amended by St.1992, c. 407, § 10.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

M.G.L.A. 111 § 127I                                                                                      Page 3


HISTORICAL AND STATUTORY NOTES

St.1965, c. 898, § 3, was approved Jan. 7, 1966.


St.1992, c. 407, § 10, approved Jan. 14, 1993, rewrote the section, which prior thereto read:


"Upon appointment such receiver shall post such bond as may be deemed sufficient by the court, shall forthwith collect all rents and profits of the property as the court shall direct and use all or any of such funds, or funds received from the commonwealth as hereinafter provided, to enable such property to meet the standards of fitness for human habitation. A receiver shall have such powers and duties as the court shall determine, including the right to evict for nonpayment of rent. A receiver may be a person, partnership or corporation."


CROSS REFERENCES

     Dwellings unfit for human habitation, appointment of a receiver, see c. 111, § 127B.

RESEARCH REFERENCES


Treatises and Practice Aids

14 Mass. Prac. Series § 3.7, District Court and Boston Municipal Court--Generally.


14 Mass. Prac. Series § 3.8, District Court and Boston Municipal Court--Equity Jurisdiction.


33 Mass. Prac. Series § 11:12, Remedies for Breach of Covenant of Habitability.


33 Mass. Prac. Series § 11:18, Covenant to Repair.


34 Mass. Prac. Series § 21:47, Injunctive Relief--Habitability.


34 Mass. Prac. Series § 21:59, Equitable Relief Under the State Sanitary Code.


34 Mass. Prac. Series § 21:60, Tenant's Petition Under State Sanitary Code--Form.


34 Mass. Prac. Series § 22:57, Condominiums and Landlord-Tenant Relationship.


43 Mass. Prac. Series § 2.10, Housing Court.


10C Mass. Prac. Series § 108:1, Receivers--In General.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

MA LEGIS 407 (1992)                                                                                     Page 1
1992 Mass. Legis. Serv. Ch. 407 (S.B. 705) (WEST)


1992 Mass. Legis. Serv. Ch. 407 (S.B. 705) (WEST)

MASSACHUSETTS 1992 LEGISLATIVE SERVICE
General Court, 1992 Regular Session
COPR. (C) WEST 1993 No Claim to Orig. Govt. Works

Additions and deletions are not identified in this document.

CHAPTER 407
S.B. No. 705
PUBLIC HEALTH—SANITARY CODE VIOLATIONS—POWERS OF HOUSING RECEIVERS

AN ACT clarifying the powers of housing receivers.

Be it enacted by the Senate and House of Representatives in General Court assembled, and by the authority of
the same, as follows:

<< MA ST 111 § 127B >>

SECTION 1. Section 127B of chapter 111 of the General Laws, as appearing in the 1990 Official Edition, is
hereby amended by inserting after the word "mortgagee", in line 15, the following words:— or lienor.

<< MA ST 111 § 127B >>

SECTION 2. Said section 127B of said chapter 111, as so appearing, is hereby further amended by striking out,
in lines 26 and 27, the words "by injunction or otherwise, to enforce the requirements of the board of health"
and inserting in place thereof the following words:— to enforce the requirements of the board of health, by
appointment of a receiver in accordance with the provisions of section one hundred and twenty-seven I, or by
providing other equitable or legal relief.

<< MA ST 111 § 127B >>

SECTION 3. Said section 127B of said chapter 111, as so appearing, is hereby further amended by inserting
after the word "mortgagee", in line 28, the following words:— or lienor.

<< MA ST 111 § 127B >>

SECTION 4. Said section 127B of said chapter 111, as so appearing, is hereby further amended by inserting
after the word "court", in line 89, the following words:— , housing court, and district court.

<< MA ST 111 § 127C >>

SECTION 5. Section 127C of said chapter 111, as so appearing, is hereby amended by striking out, in line 8 and
9, the words "within the judicial district of which such building is situated" and inserting in place thereof the
following words:— , housing court, or superior court.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

<< MA ST 111 § 127C >>

SECTION 6. Said section 127C of said chapter 111, as so appearing, is hereby further amended by striking out, in line 16, the word "district".
SECTION 7. Section 127F of said chapter 111, as so appearing, is hereby amended by adding the following paragraph:—

<< MA ST 111 § 127F >>

In lieu of or in addition to any relief that may be provided under this section, the court may appoint a receiver under section one hundred and twenty-seven I.
SECTION 8. Said chapter 111 is hereby amended by striking out section 127G, as so appearing, and inserting in place thereof the following section:—

<< MA ST 111 § 127G >>

Section 127G. At any time after thirty days from the date of a district court's order authorizing the making of rental payments into court under section one hundred and twenty-seven F, upon application of any party and upon payment of a removal fee of five dollars, the clerk of the district court shall remove the case to the superior or housing court for further proceedings therein in the same manner and to the same extent as if the petition had originally been brought in said court. The clerk of court shall forthwith transmit any rents held by him, as the result of a written order issued under section one hundred and twenty-seven F together with the removal fee, to the clerk of the superior or housing court.

<< Repealed: MA ST 111 § 127H >>

SECTION 9. Section one hundred and twenty-seven H of said chapter one hundred and eleven is hereby repealed.
SECTION 10. Said chapter 111 is hereby amended by striking out section 127I, as appearing in the 1990 Official Edition, and inserting in place thereof the following section:—

<< MA ST 111 § 127I >>

Section 127I. Upon the filing of a petition to enforce the provisions of the sanitary code, or any civil action concerning violations of the sanitary code by any affected occupants or a public agency, whether begun in the district, housing or superior court, and whether brought under section one hundred and twenty-seven C or otherwise, the court may: issue temporary restraining orders, preliminary or permanent injunctions; order payment by any affected occupants to the clerk of court, in accordance with the provisions of section one hundred and twenty-seven F; or appoint a receiver whose rights, duties and powers shall be specified by the court in accordance with the provisions of this section.
Upon receipt of service of any petition in which the appointment of a receiver is sought, the owner shall provide to the petitioner, within three days, a written list of all mortgagees and lienors of record. At least fourteen days prior to any hearing in any such proceeding, the petitioner shall send by certified or registered mail a copy of the petition to all mortgagees and lienors included in the owner's list as well as to all other mortgagees and lienors of which the petitioner may be aware, and shall notify them of the time and place of the hearing. Upon motion of the petitioner, the court may order such shorter periods of prior notice as may be justified by the facts of the case.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

MA LEGIS 407 (1992)
1992 Mass. Legis. Serv. Ch. 407 (S.B. 705) (WEST)

Page 3

Whenever a petitioner shows that violations of the sanitary code will not be promptly remedied unless a receiver is appointed and the court determines that such appointment is in the best interest of occupants residing in the property, the court shall appoint a receiver of the property. Any receiver appointed under this paragraph may be removed by the court upon a showing that the receiver is not diligently carrying out the work necessary to bring the property into compliance with the code, or that it is in the best interest of any tenants residing in the property that removal occur.

No receiver shall be appointed until the receiver furnishes a bond or such other surety and provides proof of such liability insurance as the court deems sufficient in the circumstances of the case. Upon appointment, the receiver shall promptly repair the property and maintain it in a safe and healthful condition. The receiver shall have full power to borrow funds and to grant security interests or liens on the affected property, to make such contracts as the receiver may deem necessary, and, notwithstanding any special or general law to the contrary, shall not be subject to any public bidding law nor considered a state, county or municipal employee for any purpose. In order to secure payment of any costs incurred and repayment of any loans for repair, operation, maintenance or management of the property, the receiver shall have a lien with priority over all other liens or mortgages except municipal liens, and such lien priority may be assigned to lenders for the purpose of securing loans for repair, operation, maintenance or management of the property. No such lien shall be effective unless recorded in the registry for the county in which the property is located.

The receiver shall be authorized to collect rents and shall apply the rents to payment of any repairs necessary to bring the property into compliance with the sanitary code and to necessary expenses of operation, maintenance, and management of the property, including insurance expenses and reasonable fees of the receiver, and then to payment of any unpaid taxes, assessments, penalties or interest. Any excess of income in the hands of the receiver shall then be applied to payments due any mortgagee or lienor of record.

Nothing in this section shall be deemed to relieve the owner of property of any civil or criminal liability or any duty imposed by reason of acts or omissions of the owner, nor shall appointment of a receiver suspend any obligation the owner or any other person may have for payment of taxes, of any operating or maintenance expense, or of mortgages or liens, or for repair of the premises.

The receiver shall be liable for injuries to persons and property to the same extent as the owner would have been liable; however, such liability shall be limited to the assets and income of the receivership, including any proceeds of insurance purchased by the receiver in its capacity as receiver. The receiver shall in no instance be personally liable for actions or inactions within the scope of the receiver's capacity as receiver. No suit shall be brought against the receiver except as approved by the court which appointed the receiver. Nothing herein shall be construed to limit the right of tenants to raise any counterclaims or defenses in any summary process or other action regarding possession brought by a receiver.

The remedies set forth herein shall be available to condominium unit owners and tenants in condominium units. Whenever used in this section, the term "petitioner" shall include a condominium unit owner or tenant, the term "owner" shall include a condominium association, the terms "mortgagees" and "lienors" shall include mortgagees and lienors of individual condominium units, and the term "rents" shall include condominium fees. The receiver shall have the right to impose assessments upon individual condominium units for payment of expenses incurred in the exercise of his powers, which liens shall have priority over all other liens and mortgages, except municipal liens.

The receiver shall file with the court and with all parties of record, on a bimonthly basis, an accounting of all funds received by and owed to the receiver, and all funds disbursed, and shall comply with such other reporting requirements mandated by court, unless, for cause shown, the court determines that less frequent or less detailed reports are appropriate; provided that said notice shall not be less than five days.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

MA LEGIS 407 (1992)
1992 Mass. Legis. Serv. Ch. 407 (S.B. 705) (WEST)

Page 4

<< MA ST 183A § 6 >>

SECTION 11. The first paragraph of paragraph (c) of section 6 of chapter 183A of the General Laws, as amended by chapter 8 of the acts of 1992, is hereby further amended by adding the following sentence:— In the event of the appointment of a receiver for the condominium pursuant to the provisions of chapter one hundred and eleven, the lien for charges imposed for the payment of expenses incurred by the receiver shall have priority over all other liens and mortgages, except municipal liens.

Approved January 14, 1993.

MA LEGIS 407 (1992)

MA LEGIS 407 (1992)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT C

2011 00040899
Bk: 47927 Pg: 138    Doc: DED
Page: 1 of 3    05/19/2011 12:19 PM

Quitclaim Deed

I, James J. Cotter, III, Receiver appointed in the action of Inspectional Services

Department of the City of Boston v. Kenneth Silvera, Jr., Trustee, et als., C.A. No. 10 CV

000167 on the docket of the Housing Court Department, City of Boston Division,

pursuant to the Final Judgment and Order therein, dated March 29, 2011 ( a certified

copy of which is recorded herewith), and the Receiver's Motion For Authorization To

Accept Offer To Purchase Real Estate, as allowed by the Court on March 29, 2011, for

consideration of FIVE HUNDRED SEVENTY FIVE THOUSAND and 00/100

($575,000.00) DOLLARS grant to Trinity Green Investments LLC, a Massachusetts

limited liability company with a business address at 180 Canton Street, Milton, MA

02186, with quitclaim covenants the land and building thereon located at 24 Seaver

Street, Boston (Roxbury), Massachusetts as further described in Exhibit A attached

hereto and incorporated herein by reference.

For title see deed of Kenneth Silvera, Sr., dated September 24, 1997, recorded in

the Suffolk County Registry of Deeds in Book 21762 Page 50 and the Final Judgment

and Order referenced above.

MASSACH... TAX
Suffolk County Dist...
Date: 05/19/2011 12:19 P...
Ctrl# 110325 29114 Doc# 00040...
Fee: $2,622.00 Cons: $575,000.00

Jim Tamagini
10 Kimball LN
Lynnfield

Witness our hands and seals this /9day of May, 2011

James J. Cotter, III

Commonwealth of Massachusetts

Suffolk, ss

On this     day of May, 2011, before me, the undersigned notary public, personally appeared James J. Cotter, III, and proved to me through satisfactory evidence of identification, which was                    , to be the person whose name is signed in this document, and acknowledged to me that he signed it for its stated purpose.

Name:

Notary Public

My commission expires:



Exhibit A

Property Description

24 Seaver Street, Boston (Dorchester), Ma

A certain parcel of land with the buildings thereon in that part of Boston, Suffolk County, Massachusetts, known as Roxbury, and known as and numbered 24 on Seaver Street, and shown as Lot #14 on a plan entitled "Boston, February 9, 1897, Charles H. W. Wood, Surveyor", recorded with Suffolk Registry of Deeds on Book 3208, page 107, and bounded and described as follows:

SOUTHWETERLY  on Seaver Street, on a curved line, fifty-eight and 65/100 (58.65) feet;

NORTHWESTERLY  on Lot #13 on said plan, one hundred one and 45/100 (101.45) feet;

NORTHEASTERLY  on Lot #6 on said plan, fifty-eight (58) feet;

SOUTHEASTERLY  on Lot #15 on said plan, one hundred nine and 55/100 (109.55) feet.

Containing 6,068 square feet of land more or less, or however otherwise bounded, measured or described.

# EXHIBIT D



**William Francis Galvin**
Secretary of the Commonwealth of Massachusetts

HOME     DIRECTIONS     CONTACT US                    Search sec.state.ma.us          | Search |

# Corporations Division

## Business Entity Summary

ID Number: 271261549                              | Request certificate |  | New search |

Summary for:  TRINITY GREEN INVESTMENTS, LLC

| The exact name of the Domestic Limited Liability Company (LLC):  TRINITY GREEN INVESTMENTS, LLC |
|---|

| Entity type:  Domestic Limited Liability Company (LLC) |
|---|

| Identification Number: 271261549 |
|---|

| Date of Organization in Massachusetts:  11-06-2009 |
|---|

| Last date certain: |
|---|

| The location or address where the records are maintained (A PO box is not a valid location or address): |
|---|

Address:   180 CANTON AVENUE

City or town, State, Zip code, Country:      MILTON,  MA  02186  USA

| The name and address of the Resident Agent: |
|---|

Name:     THOMAS G. BRODERICK, JR.

Address:   180 CANTON AVENUE

City or town, State, Zip code, Country:      MILTON,  MA  02186  USA

| The name and business address of each Manager: |
|---|

| Title | Individual name | Address |
|---|---|---|
| MANAGER | TIMOTHY J. RUSSELL | 58 EVERGREEN STREET KIMGSTON, MA 02364 USA |
| MANAGER | THOMAS G. BRODERICK JR. | 180 CANTON AVENUE MILTON, MA 02186 USA |

**In addition to the manager(s), the name and business address of the person(s) authorized to execute
documents to be filed with the Corporations Division:**

| Title | Individual name | Address |
|---|---|---|
| SOC SIGNATORY | THOMAS BRODERICK | 180 CANTON AVENUE MILTON, MA 02186 USA |

**The name and business address of the person(s) authorized to execute, acknowledge, deliver, and record
any recordable instrument purporting to affect an interest in real property:**

| Title | Individual name | Address |
|---|---|---|
| REAL PROPERTY | THOMAS G. BRODERICK JR. | 180 CANTON AVENUE MILTON, MA 02186 USA |
| REAL PROPERTY | TIMOTHY J. RUSSELL | 58 EVERGREEN STREET KINGSTON, MA 02364 USA |

| | Consent | Confidential Data | Merger Allowed | Manufacturing |
|---|---|---|---|---|

View filings for this business entity:

Annual Report
Annual Report - Professional
Articles of Entity Conversion
Certificate of Amendment

Certificate of Consolidation
Certificate of Consolidation - Unregistered Foreign   | View filings |
Certificate of Merger

Certificate of Organization  associated with this business entity:
Certificate of Organization
Certificate of Resignation of Resident Agent
Reinstatement Following Administrative Dissolution
Restated Certificate of Organization
Statement of Change of Resident Agent/Resident Office
Statement of Change of Resident Office Address by Resident Agent

Case 1:16-cv-10636-LTS   Document 1-5   Filed 04/01/16   Page 30 of 41

Mass. Corporations, external master page                                    Page 2 of 2

[ New search ]

William Francis Galvin, Secretary of the Commonwealth of Massachusetts
Terms and Conditions

# EXHIBIT E

## Housing-rehab program opens doors in Lowell

*By Lyle Moran, lmoran@lowellsun.com Lowell Sun*
*Updated:*

LowellSun.com

LOWELL -- The city's efforts to have problem properties placed into receivership so they can be rehabilitated and returned to positive use is off to a successful start, say city officials.

This summer, state Housing Court Judge David D. Kerman granted Lowell's Department of Planning and Development's request to appoint receivers for 128 Sixth St. in Centralville and 41 Ellis Ave. in Pawtucketville.

The Sixth Street property was chosen for receivership because it lacked the required fire-safety devices and accumulated trash and debris. It was also declared unfit for human habitation by the city due to significant disrepair.

Exposed wiring, a compromised bearing wall and missing roof sections were several of the problems identified at 41 Ellis Ave., according to Kendra Amaral, Lowell's deputy director of the Division of Development Services.

The Charles Hope Companies, LLP, which has locations in North Andover and Lawrence, was named the receiver for the two properties, said Amaral. The company will be expected to conduct the repairs necessary to bring the properties into compliance with state and local codes.

Once the rehabilitation work, which can take up to a year, is finished, the receiver can recoup the money it has spent rehabbing the properties through selling them or collecting rental income.

Proceeds from selling or renting the properties will also go toward paying off the thousands of dollars in outstanding municipal taxes, fines and fees tied to the properties. The city could receive upwards of $30,000 in back taxes and fines from the two initial properties put into receivership.

No taxpayer money is spent on the receivership program.

"By pursuing receivership, the city has an opportunity to rehabilitate properties that are blighting an otherwise solid neighborhood, bring them to a condition consistent with surrounding houses and bring them back into beneficial use," Assistant City Manager Adam Baacke wrote in a memo to City Manager Bernie Lynch that was provided to the City Council last month.

City officials began identifying properties for receivership in November 2010. The properties targeted typically are abandoned, have a history of code violations and pose health and safety hazards to the public.

State law gives municipalities the power to pursue receivership for problem properties, said

Baacke.

Six other properties identified for receivership last year are in the process of or have completed the repairs necessary to make them ineligible for receivership. The properties were 173-175 Westford St., 452 Westford St., 48 East Pine St., 18 Dalton St., 41 West L St., and 491-493 Concord St.

"The threat of receivership has already motivated several property owners to address the issues with their buildings," Baacke said in a prepared statement.

Development Services is already focusing on the next round of properties it will seek to place into receivership.

The properties are 603 Chelmsford St., 1-3 Brooks St., 80 Lafayette St., 35 Albion St., and 24 Jewett St.

Petitions for receivership for those properties could be filed early this month, according to Baacke.

City Councilor Kevin Broderick called the receivership program a "win-win" for the city and its neighborhoods, and said he hopes it will lead to more abandoned problem properties becoming owner-occupied.

"It is a way to be proactive and use non-city funds to rehab properties and improve neighborhoods," he said.

# EXHIBIT F

BK 14155 PG 145

Bk: 14155 Pg: 145   Page: 1 of 7
Recorded: 12/06/2002 09:22 AM

Return to:
Thomas G. Broderick, Jr.
180 Canton Street
Milton, MA 02186

MORTGAGE

THOMAS G. BRODERICK, JR.

TO

KEVIN P. BRODERICK

[Space Above This Line For Recording Data]

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on ......October 20, 2002........................... . The mortgagor is
..........Kevin.P..Broderick...............................................................................................................................
............................................................................................................................................................................
("Borrower"). This Security Instrument is given to ......Thomas.G..Broderick,.Jr.,.an.individual......................
.................................................................................., which is organized and existing under the laws of
......................................................................................... , and whose address is .180 Canton Street .....
.Milton, MA 02186 ........................................................................................................... ("Lender").
Borrower owes Lender the principal sum of ...... Sixty.Thousand..................................................................
.....................................and .00/100...... Dollars (U.S. $ ...60,000.00...................). This debt is evidenced by Borrower's
note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if
not paid earlier, due and payable on ..._October 30, 2012...................... . This Security Instrument secures to Lender:
(a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the
Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security
Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.
For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following described
property located in ...Lowell, Massachusetts.................................... County, Massachusetts:

LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A" AND MADE A PART HEREOF

which has the address of ...... 175 Fairmont Street ............................................... , ........Lowell................... ,
                                          [Street]                                                                   [City]
Massachusetts ...01852................... ("Property Address");
                        [Zip Code]

MASSACHUSETTS—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

BANKERS SYSTEMS, INC., ST. CLOUD, MN 56302 (1-800-397-2341) FORM MD-1-MA 2/11/91

Form 2022 9/90 (page 1 of 6 pages)

BK 14155PG146

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which

Form 3022 9/90 *(page 2 of 6 pages)*

BANKERS SYSTEMS, INC., ST. CLOUD, MN 56302 (1-800-397-2341) FORM MD-1-MA 2/11/91

BK14155PG147

may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5.  **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6.  **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7.  **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8.  **Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage

Form 3822 9/90 (page 3 of 6 pages)

BK14155PG148

insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the

Form 3022 9/90 *(page 4 of 6 pages)*

SYSTEMS, INC., ST. CLOUD, MN 56302 (1-800-397-2341) FORM MD-1-MA  2/11/91

BK14155PG149

jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies

Form 3022 9/90 *(page 5 of 6 pages)*

BANKERS SYSTEMS, INC., ST. CLOUD, MN 56302 (1-800-397-2341) FORM MD-1-MA 2/11/91

BK14155PG150

permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

23. **Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

24. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ Other(s) [specify] | | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

.............................................................................. (Seal)
KEVIN P. BRODERICK                                  –Borrower

Social Security Number ...........................................................................

.............................................................................. (Seal)
                                                                                  –Borrower

Social Security Number ...........................................................................

———————————————— [Space Below This Line For Acknowledgment] ————————————————

COMMONWEALTH OF MASSACHUSETTS, .................................................................................. County ss:

On this ........................30th.................................. day of ..... October, 2002 ..........................................,
before me personally appeared .....Kevin P. Broderick.............................................................................................
.................................................................................... , to me known to be the person (or persons) described in and who
executed the foregoing instrument, and acknowledged that ........he........................................... executed the same as
..................his............................................. free act and deed.

My commission expires:  10/21/05

.............................................................................
CATHY J. HAMILTON, NOTARY PUBLIC

BK 14155 PG 154

Exhibit A

The land in said Lowell, with the buildings thereon, situated on the southwesterly side of Fairmount Street, and bounded and described:

Beginning at a point on the southwesterly side of said Fairmount Street at the northeasterly corner of the premises land now or formerly of one Sawyer; thence southeasterly along said Fairmount Street 80 feet to a point; thence at a right southwesterly along land now or formerly of John W. Pead to a point at land now or formerly of one Sheehan; thence northwesterly along said Sheehan land about 100 feet to said Sawyer land; thence easterly along said Sawyer land 151.14 feet to the point of beginning.

Subject to and with the benefits of any and all rights, easements, restrictions and reservations of record in so far the same may now be in force and applicable thereto.

Subject to and with benefit of a ten (10) foot wide way, five feet of which is on the granted premises, along the southeasterly side of the granted premises and the adjacent premises to the southeast.

Being the same premises conveyed to the herein named mortgagor (s) by deed recorded with Middlesex North District Registry of Deeds herewith.

END OF DOCUMENT