# Exhibit C

# HARMON LAW OFFICES, P.C.
150 CALIFORNIA STREET
NEWTON, MASSACHUSETTS 02458

*SERVING MASSACHUSETTS, NEW HAMPSHIRE AND RHODE ISLAND*

*Admitted in MA, RJ and NH

SCOTT C. OWENS*
(617) 558-0738
(617) 243-4038 Facsimile
sowens@harmonlaw.com

October 8, 2015

Civil Clerk's Office
Boston Housing Court
Edward W. Brooke Courthouse
24 New Chardon Street
Boston, MA 02114

**Re:** **City of Boston v. James Dickey et al**
**Boston Housing Court Docket No.: 12CV00376**

Dear Sir/Madam:

Enclosed for filing, related to the above referenced matter, please find a Motion for Leave to Foreclose.

Please place the above motion on the hearing list with the previously scheduled review hearing of October 23, 2015 at 9:00 am. Thank you for your assistance in this matter.

Sincerely,

Scott C. Owens, Esq.
HARMON LAW OFFICES, P.C.

Enclosure

cc: James S. Dickey (10 Newbridge Road, Sudbury, MA 01776)
James J. Cotter, Esq. (P.O. Box 270, N. Quincy, MA 02171)
Edward Coburn, Esq. (Boston ISD, 1010 Massachusetts Ave., Boston, MA 02118)

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                    BOSTON HOUSING COURT
                                                DOCKET NO. 12-CV-00376

---

CITY OF BOSTON, INSPECTIONAL
SERVICES DEPARTMENT

    Plaintiff,

v.

JAMES DICKEY

    Defendant,

---

## PARTY IN INTEREST US BANK'S MOTION FOR LEAVE OF COURT TO CONDUCT FORECLOSE

Now comes Party in Interest, U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust ("U.S. Bank Trustee"), holder of a first mortgage on the property located at 497 East Fourth Street, South Boston, Massachusetts (the "Property"), and moves this Honorable Court for leave to conduct a foreclose of the Property by exercising the Power of Sale contained in its mortgage.

As grounds therefore, U.S. Bank Trustee states as follows:

1. On or about August 4, 2003, the defendant, James Dickey, granted a mortgage to Champion Mortgage, a Division of Key Bank USA, National Association, encumbering the Property, in the original face amount of $220,000.00, which was duly recorded with the Suffolk County Registry of Deeds at Book 32410, Page 22 (hereinafter "Mortgage"). A true and accurate copy of the Mortgage is attached hereto as **Exhibit A**.

2. The Mortgage is currently held, through the chain of assignments, by U.S. Bank Trustee. Caliber Home Loans is the current servicer of the mortgage for U.S.

Bank Trustee. A true and accurate copy of the chain of assignments ending in U.S. Bank, Trustee is attached hereto as **Exhibit B**.

3. Dickey has defaulted under the terms and conditions of both the Note and Mortgage by, inter alia, failing to make the required monthly payments. As a result of the default, the subject loan has been referred for foreclosure. Mr. Dickey has not cured the default.

4. On or about January 30, 2015, US Bank filed a Complaint to Foreclose Mortgage with the Massachusetts Land Court. US Bank obtained a Servicemembers Civil Relief Act judgment from the Land Court on July 6, 2015. A true and accurate copy of the SCRA Judgment is attached as **Exhibit C**.

5. A mortgage foreclosure sale is currently being scheduled for November 9, 2015.

6. The above action was brought by the City of Boston to enforce the State Sanitary Code due to numerous code violations found at the Property.

7. On or about June 8, 2012, this Court issued an Order Appointing James Cotter as Receiver to take possession of the Property and to correct the outstanding code violations, which project remains ongoing.

8. U.S. Bank Trustee has received notice from several individuals interested in acquiring the Property and possibly taking over control from the receiver in order to restore the premises. U.S. Bank Trustee believes that a publically advertised foreclosure sale will provide an opportunity to realize some payment on its own loan while at the same time bringing individuals interested in restoring the premises to the Property.

9. In an effort to make any potential purchasers aware of the receivership on the property, U.S. Bank Trustee proposes that the attached "Notice to Prospective Purchasers", be announced at the foreclosure sale and that a copy of said Notice be attached to the Memorandum of Sale.

10. Allowing U.S. Bank Trustee to foreclose will best serve everyone's interests. The receiver's lien has priority and will not be disturbed by the foreclosure. The receiver will still be in a position to maintain the property and correct any code violations as required by the City and Court. U.S. Bank Trustee, if it purchases the property at the auction, will be in a better position as owner to ensure that the Property comes into and stays in compliance with all applicable codes and regulations. Any third party purchaser will have advanced notice of these proceedings at the auction and will purchase the Property subject to the receivership, but will have the opportunity to convince the Court that they have the intention and resources to rehabilitate and maintain the property in compliance with code and will need to obtain approval of this court for title to transfer and dissolve the receivership.

WHEREFORE, U.S. Bank Trustee prays that the Court:

1. Enter an Order granting leave for U.S. Bank Trustee, or its successors and assigns, to foreclose on the subject Property; and

2. Grant such other and further relief as this Court deems appropriate.

                                      Respectfully submitted,
                                      **U.S. BANK TRUST, N.A. AS**
                                      **TRUSTEE FOR LSF9 MASTER**
                                      **PARTICIPATION TRUST**
                                      By its attorney,

                                      _____
                                      Scott C. Owens, Esq.
                                      BBO # 654406
                                      HARMON LAW OFFICES, P.C.
                                      150 California Street
                                      Newton, MA  02458
                                      (617) 558-0738

DATED: October 8, 2015

---

I HEREBY CERTIFY THAT A TRUE COPY OF THE ABOVE DOCUMENT WAS SERVED UPON (EACH PARTY APPEARING PRO SE AND) THE ATTORNEY OF RECORD FOR EACH PARTY BY MAIL (BY HAND) ON 10 / 8 / 15. and e-mail.

_____ (SIGNATURE)

# NOTICE TO PROSPECTIVE PURCHASERS OF
# 497 EAST FORUTH STREET, SOUTH BOSTON, MA

On June 8, 2012, the Boston Housing Court ordered that 66 Stanley Street, Dorchester, MA, which is currently scheduled for foreclosure auction on November 9, 2015, be placed into receivership (Docket No. 12H84CV00376). Although the seller may accept offers for the property, including bids at foreclosure sale, all pending sales of the property, including foreclosure sales, will be subject to the receivership, including any amounts owed on the receivers' lien, and must first be approved by the Court before title to the property may be transferred.

**Standard for Approval of Transfer of Title:** The standard for approval of transfer of title will be a satisfactory showing that the buyer has both the intention and ability to bring the property into compliance with the applicable laws, codes and regulations intended for the health, safety and welfare of occupants of residential premises and the public. Acting under the direction and/or under the control of the receiver, the buyer shall be responsible for correcting the balance of any code violations not previously remedied by the receiver and shall need to obtain the necessary occupancy permits and/or certificates of inspection. The buyer agrees to be added as a defendant to the receivership action, attend all future status hearings and cooperate with the receiver in all reasonable respects unless otherwise ordered by the Court.

**Standard for Dissolution of Receivership:** An approved new owner of the property may move the Court for modification or dissolution of the receivership at any time for good cause shown.

**Receiver's Lien:** Pursuant to G.L. c. 111, § 127I, the receiver has established a super-priority lien on the property in the amount of $_____, as of _____ based upon an accounting to be filed with the court. Said lien is subject to additional charges for repairs and expense of the receiver inquired subsequent to _____ and subsequent to the auction date.

Copies of all papers relative to this receivership of this property may be obtained from:

**The Boston Housing Court**
**Edward W. Brooke Courthouse**
**24 New Chardon Street**
**Boston, MA 02114**

32410 022

CHAMPION MORTGAGE, 2 GATEHALL DRIVE, PARSIPPANY, NJ 07054

843

File # 1801662   2003AUG 12 PM 1:59

REGISTER OF DEEDS

**EXHIBIT A**

[Space Above This Line for Recording Data]

Record and Return to:
TOPKINS & BEVANS
255 BEAR HILL ROAD
WALTHAM, MA 02154

Prepared by:

, NM

## MASSACHUSETTS ADJUSTABLE RATE PAYMENT MORTGAGE – FIRST OR SECOND LIEN

THE NOTE SECURED BY THIS MORTGAGE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM AND MINIMUM RATES THE BORROWER MUST PAY.

THIS MORTGAGE ("Security Instrument") is given on AUGUST 04, 2003. The Mortgagor is JAMES S. DICKEY UNMARRIED ("Borrower"), whose address is 497 EAST FOURTH ST ; BOSTON, MA 02127. This Security Instrument is given to CHAMPION MORTGAGE , A DIVISION OF KEY BANK, USA, NATIONAL ASSOCIATION ("Lender"), a national bank organized and existing under the laws of the United States, whose address is 2 GATEHALL DRIVE, PARSIPPANY, NJ 07054. Borrower owes Lender the principal sum of TWO HUNDRED TWENTY THOUSAND AND 00/100 Dollars (U.S. $220,000.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on AUGUST 08, 2033. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with the STATUTORY POWER OF SALE, the following described property located in the County of SUFFOLK, Massachusetts:

-See Schedule A Attached Hereto and Made a Part Hereof-

which has the address of 497 EAST FOURTH STREET, SO BOSTON , MASSACHUSETTS ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property".

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record. Borrower and Lender covenant and agree as follows:

1.   Payment of Principal and Interest; Prepayment and Late Charges; Dishonored Check Charge

Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note. If Borrower makes a payment by check, draft or money order and such check, draft or money order is dishonored on the second presentment, Borrower shall pay a dishonored check charge of $20.00.

[handwritten margin: 497 East Fourth Street, South Boston]
[handwritten: JSD]

08/12/2003 Doc: 0843

## 2. Funds for Taxes and Insurance

Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items". Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes payment of such Escrow Items to the holder or servicer of a mortgage encumbering the Property which has priority over this Security Instrument and which was approved by Lender at the time of origination of this Security Instrument (an "Approved Senior Security Instrument").

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve (12) monthly payments, at Lender's sole discretion. Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 19, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

## 3. Application of Payments

Unless applicable law provides otherwise, all payments received by Lender shall be applied in accordance with the terms of the Note.

## 4. Charges; Liens; Approved Senior Security Instrument

Borrower shall pay or cause to be paid, when due, all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Agreement, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments. Borrower covenants and agrees to timely perform all of Borrower's obligations under any Approved Senior Security Instrument, including by way of example and not by way of limitation, Borrower's obligation to make all payments when due under such Approved Senior Security Instrument and the note or other obligation secured thereby.

Borrower shall promptly discharge any lien which has priority over this Security Instrument (other than an Approved Senior Security Instrument) unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

## 5. Hazard or Property Insurance

Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender or applicable law requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender, or applicable law, requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

32410 024

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, and subject to the rights of the holder of any Approved Senior Security Instrument, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied, subject to the rights of the holder of any Approved Senior Security Instrument, to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within thirty (30) days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender, subject to the rights of the holder of any Approved Senior Security Instrument, may collect the insurance proceeds. Lender may use the proceeds received by Lender to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The thirty (30) day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 19 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds

Unless Borrower's loan application and the Lender's loan approval provided that the Property was not required to be occupied as Borrower's principal residence, Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty (60) days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. Protection of Lender's Rights in the Property

If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, paying real estate taxes, flood insurance and mortgage insurance premiums, appearing in court, paying reasonable attorney fees, entering on the Property to make repairs, and paying property insurance premiums. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. Mortgage Insurance

If Lender required mortgage insurance as a condition of making the loan evidenced by the Note and secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement of mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

32410 025

9. **Inspection**

Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. **Condemnation**

The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or any part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject only to the rights of the holder of any Approved Senior Security Instrument. Unless Lender and Borrower otherwise agree in writing, any application of such proceeds which does not pay the principal sum secured by this Security Instrument in full, shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. **Borrower Not Released; Forbearance by Lender Not a Waiver**

Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers**

The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 19(B). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Loan Charges**

If the loan secured by this Security Instrument is subject to a law or regulation which sets maximum loan charges, and that law or regulation is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. **Notices**

Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first-class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first-class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. **Governing Law; Severability**

This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. **Borrower's Copy**

Borrower acknowledges receipt of a conformed copy or a photocopy of the Note and of this Security Instrument.



32410  026

### 17. Sale of Note; Change of Loan Servicer

The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

### 18. Hazardous Substances

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 18, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 18, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

### 19. Lender's Rights if Borrower Fails to Keep Promises

If any of the events or conditions described in subparagraphs (A), (B), (C), (D) or (E) of this paragraph 19 shall occur, Lender may require that Borrower pay immediately the entire amount remaining unpaid under the Note and this Security Instrument. This requirement will be called "Immediate Payment in Full". If Lender requires Immediate Payment in Full, Lender may invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred by Lender in pursuing the remedies provided in this paragraph 19, including, but not limited to, reasonable attorney fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including but not limited to, reasonable attorney fees; (b) all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this paragraph 19, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

Lender may require Immediate Payment in Full under this paragraph 19 if:

(A)   Borrower fails to make any payment required by the Note or this Security Instrument when it is due; or

(B)   All or any part of the Property, or any interest in the Property is sold or transferred (or, if Borrower is not a natural person, if a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent; or

(C)   On application of Lender two or more insurance companies licensed to do business in the state in which the Property is located refuse to issue policies insuring the buildings and improvements on the Property; or

(D)   Borrower fails to make any required payment when due on any Approved Senior Security Instrument, or if Borrower fails to keep any other promise or agreement contained in any Approved Senior Security Instrument; or

(E)   Borrower fails to keep any other promise or agreement in this Security Instrument within the time set forth, or if no time is set forth in this Security Instrument, then within the time set forth in the notice sent to Borrower by Lender, or if Borrower is otherwise in default under this Security Instrument, or if any of the covenants, representations and/or warranties made by Borrower in this Security Instrument are not true and correct in any material respect or are otherwise breached by Borrower.

32410  027

20. **Release**

Upon payment in full of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs as permitted under Applicable Law. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

21. **Waivers**

Borrower hereby waives all rights of homestead exemption in the Property and relinquishes all rights of courtesy and dower in the Property.

22. **Riders to this Security Instrument**

If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

- REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE
UNDER SENIOR MORTGAGES OR DEEDS OF TRUST -

Borrower and Lender request the holder of any mortgage or deed of trust or other lien or encumbrance which claims to have priority over this Security Instrument (any of such a "senior lien") to give notice to Lender, at Lender's address set forth on the first page of this Security Instrument, or at any other address for notice provided by Lender to such holder, of any default under any such senior lien and of any intended foreclosure, sale or other action to enforce such senior lien. This request for notice is not intended, nor shall it constitute, an admission by the holder of this Security Instrument that any mortgage, deed of trust or other lien or encumbrance has priority over this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

In Witness Whereof, Borrower has signed and sealed this Security Instrument.

_____
JAMES S. DICKEY

Witness: _____
SHANNON P. KNIGHT   ELLIOTT S. TOPKINS

COMMONWEALTH OF MASSACHUSETTS)
                              :ss.
COUNTY OF SUFFOLK             )

On this 4TH day of AUGUST, 2003, before me personally appeared JAMES S. DICKEY UNMARRIED, to me known to be the person(s) described in and who executed the foregoing instrument and acknowledged that he/she/they executed the same as his/her/their free act and deed.

_____
Notary Public

ELLIOTT S. TOPKINS
NOTARY PUBLIC
My Commission Expires 4/22/05

My Commission Expires: _____

Exhibit A - Property Description   32410   028

Closing date: 8/4/03

Borrower(s): James S. Dickey

Property Address: 497 East Fourth Street, South Boston (Boston), Massachusetts 02127

A certain parcel of land with the buildings, structures and improvements thereon, situated in that part of Boston called South Boston, now known and numbered as 497 East Fourth Street and bounded and described as follows:

Beginning at a point on the Southerly side of East Fourth Street, distant forty-two and 46/100 (42.46) feet from Pacific Street, thence running

| | |
|---|---|
| EASTERLY | by said east Street, twenty one and 54/100 (21.54) feet; thence running |
| SOUTHERLY | by land now of James, fifty-four and 60/100 (54.68) feet; thence running |
| WESTERLY | by a four (4) foot passageway, twenty and 99/100 (20.99) feet; thence running |
| NORTHERLY | by land of Mead, sixty-four and 19/100 feet to the point of Beginning. |

Together with the Right of Passageway in common with others,

Meaning and intending to convey and hereby conveying the same premises conveyed to me/us by deed dated 12/08/1988 and recorded with Suffolk Registry of Deeds in Book 15226, Page 129.

CP-DICKE



Error! AutoText entry not defined.

Bk: 41450 Pg: 232

Loan#: 1801662
Effective Date: 11/29/2006



Bk: 41450 Pg: 232 Doc: AST
Page: 1 of 1 03/15/2007 11:27 AM


EXHIBIT B-1

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, CHAMPION MORTGAGE, A DIVISION OF KEYBANK, NA AS SUCCESSOR BY MERGER TO CHAMPION MORTGAGE, A DIVISION OF KEY BANK, USA, NA, A NATIONAL BANK, WHOSE ADDRESS IS 2 GATEHALL DRIVE, PARSIPPANY, NJ 07054, (ASSIGNOR), by these presents does convey, grant, sell, assign, transfer and set over the described mortgage together with the certain note(s) described therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to HOUSEHOLD FINANCE CORP II, WHOSE ADDRESS IS 577 LAMONT ROAD, ELMHURST, IL 60126, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).
Said Mortgage bearing the date 08/04/2003, made and executed by: JAMES S DICKEY as mortgagor to CHAMPION MORTGAGE, A DIVISION OF KEY BANK, USA, NA as mortgagee, in the Office of the Register of Titles and County Recorder in and for the County of SUFFOLK and State of Massachusetts in Mortgage Book 32410, Page 22, Doc No

Property commonly known as: 497 E FOURTH STREET
SO BOSTON, MA 02127

In Testimony Whereof, the said corporation has caused these present to be executed in its corporate name by its DIVISION OFFICER and its corporate seal to be hereunto affixed THIS 12TH DAY OF FEBRUARY IN THE YEAR 2007
CHAMPION MORTGAGE, A DIVISION OF KEYBANK, NA AS SUCCESSOR BY MERGER TO CHAMPION MORTGAGE, A DIVISION OF KEY BANK, USA, NA

(seal)

SEAL

BY: _____
Karen A. Marcano  DIVISION OFFICER

STATE OF NEW JERSEY  COUNTY OF Morris
On THIS 12TH DAY OF FEBRUARY IN THE YEAR 2007, before me, the undersigned notary public, personally appeared Karen A. Marcano proved to me through satisfactory evidence of identification, which was a State issued Picture ID, to be the person whose name is signed on the preceding document, and acknowledged to me that he/she signed it voluntarily for its stated purpose as the DIVISION OFFICER of CHAMPION MORTGAGE, A DIVISION OF KEYBANK, NA AS SUCCESSOR BY MERGER TO CHAMPION MORTGAGE, A DIVISION OF KEY BANK, USA, NA a corporation.

_____
Leisa Van Dunk  Notary Public
My commission expires: 03/22/2010

LEISA VAN DUNK
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES MARCH 22, 2010

Instrument Prepared By: J. Lesinski/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
When Recorded Return To: Nationwide Title Clearing
2100 Alt. 19 North
Palm Harbor, FL 34683

KBASN 7440244  CJ1289698

BK: 53946 Pg: 56


EXHIBIT B-2

RECORDING REQUESTED BY AND WHEN RECORDED RETURN TO:
CALIBER HOME LOANS
13801 Wireless Way
Oklahoma City, OK 73134

| | | | |
|---|---|---|---|
| Prepared By: | Jessica Martinez | Loan Number: | 9803877977 |
| MERS Min: | 000000000000000000 | | |
| Parcel ID:: | W:07 P:01015 S:000 | | |

Space Above This Line For Recorder's Use

## ASSIGNMENT OF MORTGAGE/DEED OF TRUST

FOR VALUE RECEIVED, the undersigned HOUSEHOLD FINANCE CORPORATION II whose address is 636 GRAND REGENCY BLVD., BRANDON, FL 33510, hereby grants, assigns and transfers to U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST whose address is 13801 WIRELESS WAY, OKLAHOMA CITY, OK 73134 all beneficial interest under that certain mortgage/Deed of Trust/Security Deed dated 08/04/2003 executed by JAMES S DICKEY to CHAMPION MORTGAGE, A DIVISION OF KEY BANK, USA NATIONAL ASSOCIATION in the amount of $220,000.00 and recorded on 8/12/2003 as Instrument # 0843, in Book/Volume or Liber No. 32410, Page/folio 022 of Official Records in the County Recorder's office of SUFFOLK County, MA, describing land herein as: 'SEE ATTACHED 'EXHIBIT A'

Property Address: 497 EAST FOURTH STREET, SOUTH BOSTON MA 02127

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said mortgage/Deed of Trust/Security Deed.

HOUSEHOLD FINANCE CORPORATION II BY CALIBER HOME LOANS INC., AS ITS ATTORNEY IN FACT

Witness #1 Lydia Rodriguez
Witness #2 Ena Candelaria

By: Jason Adams
Title: Ass't Vice President
Date: _____

County of San Diego )
State of California )

A notary public or other officer completing this certificate verifies only the indentity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

On _____, _____ before me, _____, Notary Public, personally appeared, _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand official seal,

Notary Name: _____   My Commission Expires: _____

# ACKNOWLEDGMENT

A Notary Public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of San Diego

On __Jan. 5, 2015__ before me, ___Ashlee Faunce, Notary Public___
(insert name and title of the officer)

personally appeared ___Jason Adams___,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

ASHLEE FAUNCE
Commission # 1993906
Notary Public - California
San Diego County
My Comm. Expires Oct 13, 2016

Generated by TallPDF.NET Evaluation

Exhibit A - Property Description  32410  028

Closing date: 8/4/03

Borrower(s): James S. Dickey

Property Address: 497 East Fourth Street, South Boston (Boston), Massachusetts 02127

A certain parcel of land with the buildings, structures and improvements thereon, situated in that part of Boston called South Boston, now known and numbered as 497 East Fourth Street and bounded and described as follows:

Beginning at a point on the Southerly side of East Fourth Street, distant forty-two and 46/100 (42.46) feet from Pacific Street, thence running

| | |
|---|---|
| **EASTERLY** | by said east Street, twenty one and 54/100 (21.54) feet; thence running |
| **SOUTHERLY** | by land now of James, fifty-four and 60/100 (54.60) feet; thence running |
| **WESTERLY** | by a four (4) foot passageway, twenty and 99/100 (20.99) feet; thence running |
| **NORTHERLY** | by land of Mead, sixty-four and 19/100 feet to the point of Beginning. |

Together with the Right of Passageway in common with others,

Meaning and intending to convey and hereby conveying the same premises conveyed to me/us by deed dated 12/08/1988 and recorded with Suffolk Registry of Deeds in Book 15226, Page 129.

**CP-DICKE**



Error! AutoText entry not defined.
Click here to unlock TallPDF.NET



LAND COURT
FIL...

2015 JAN 30 PM 2:31

Date July 6, 2015

LET JUDGMENT ISSUE:

Judith C. Cutler, Chief Justice

**COMMONWEALTH OF MASSACHUSETTS**

**LAND COURT**  15 SM 000603

**DEPARTMENT OF THE TRIAL COURT**

SUFFOLK, ss.                                      2015 MISC.

U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust,
— Plaintiff
v.

James S. Dickey,
                Defendant

**COMPLAINT TO DETERMINE MILITARY STATUS**

1. Your Plaintiff has an interest in a mortgage with the statutory power of sale given by James S. Dickey to Champion Mortgage, a Division of Key Bank, USA, National Association dated August 4, 2003, recorded at the Suffolk County Registry of Deeds in Book 32410, Page 22 as affected by Loan modification agreement dated and recorded with said Registry in Book 46752, Page 174, and as affected by Loan modification agreement dated and recorded with said Registry in Book 46925, Page 309 covering 497 East Fourth Street, South Boston (Boston) and more particularly described in said mortgage.

2. No Defendant(s) is/are in the military service within the meaning of the Servicemembers Civil Relief Act, 50 U.S.C. App. § 501 (et seq)

3. The Plaintiff alleges on information and belief that the Defendant(s) is/are the only person(s) holding the equity of redemption of the property covered by the mortgage described in Paragraph 1 of this Complaint so far as appears of record in the said Registry of Deeds and as known to your plaintiff.

4. The holder of the mortgage seeks to proceed with the foreclosure of said mortgage described in Paragraph 1 to protect its interest as secured thereby for breach of the conditions thereof and desires to comply with the provisions of the Servicemembers Civil Relief Act.

Wherefore your plaintiff prays:

1. For an order of notice ordering the defendant to appear and answer this complaint if defendant(s) is/are now, or recently have been, in the active military service and claim the benefits of the Servicemembers Civil Relief Act.
2. For a judgment declaring that the Defendant(s) is/are not entitled to the benefits of the Servicemembers Civil Relief Act.

201010-2237                        FCL

/Complaint (New March 2011)/Dickey, James S.

ATTORNEY FOR PLAINTIFF
Anne E Shannon, Esquire
BBO# 689771
Date: 1-30-15

15 SM 000603

From the office of:

Harmon Law Offices, P.C.
150 California Street
Newton, MA 02458

Telephone No. (617) 558-0500

Office File No. (If Available) 201010-2237/FCL/PRP

## LAND COURT USE ONLY

Under the provisions of the Servicemembers Civil Relief Act, this cause came on to be heard and thereupon, upon consideration thereof, it appearing to the Court that the Defendant(s) is/are not entitled to the benefits of said Act, it is hereby

**ORDERED and ADJUDGED** that the Defendant(s) is/are not entitled to the benefits of the Servicemembers Civil Relief Act, as of _March 24, 2015_, the date of the allowance of Plaintiff's motion for judgment.

By the Court ().

Attest:

(SEAL)

TRUE COPY
ATTEST:
Deborah J. Patterson
--ORDER

Deborah J. Patterson
Recorder